May it please the court. The most important issues in this case, that is whether a license was required and whether or not the conduct was willful, were decided by opinion and not by the jury. And the reason why those two instances of opinion testimony were prejudicial is because the record is otherwise void of reasons why a license might be required. Well, let's talk about whether a license was required, that issue. It appears to me from this record that your client affirmatively waived any argument that a license was not required. In opening statement, counsel says, because it has a dual application, it is listed on this commerce control list as the type of equipment that requires a license. If sent to certain countries, one of those countries is Libya. He later stated, we are not disputing that the license is required. At sentencing, when the judge summarized the paragraph in the PSI as basically saying these rebreathers were on the commerce control list, counsel replied, that's not an issue. We don't object to that. I mean, I could go on. How is that not affirmatively waived? Well, it was in opening statement, yes. However, as I understand, opening statement is not evidence. And his focus for the defense was on whether the conduct was willful. However, the jury did not even have to accept arguments in opening statement, and it was incumbent upon the government to prove that a license was required or that still the government's burden. And what we have in this case is a witness from the government jumping to the issue of whether or not a license was required and saying that if one was, because these particular items were closed circuit, semi-closed circuit rebreathers, micro circuit, he basically lumped all rebreathers into one and failed to specify what these particular rebreathers were. Well, we do. Well, if we have, we have to meet the evidence in the light most favorable to the government, right? Yes. How is it not sufficient evidence that the rebreathers were either closed circuit or semi-closed circuit, in which case a license is required? Actually, under the commerce control list being listed there, in this case under 8A002.Q, there are divisions of one and two. One applies to closed circuit rebreathers, which is what the government alleged. Even a brief purview of the commerce control list will show that every item is specifically listed. It is important to know what we are dealing with. The government never proved that these particular rebreathers were closed circuit. I made my arguments in the brief that this was a fatal variance. And so why does it matter? Why does it really matter? Because closed circuit rebreathers are far more dangerous. In fact, it was described by two, the government witness, that closed circuit rebreathers can be used for stealth purposes. They don't create bubbles. They do escape detection devices, sonar. And all this evidence came in about how dangerous closed circuit rebreathers are. And the defense couldn't really object because that was the charge defense. So the question is, did they take the evidence that was admitted, to which they couldn't object because it was alleged in the charging information or the charging indictment, and connect it with this particular item in question? And they did not. In fact, the government's case established that these particular rebreathers were rejected for military use. Dual use requires an analysis of the application of the item. Of course, in this case, beyond the issue of waiver or perhaps an invited error in the case, I want to make the observation that the defense in this case, right up to the time of sentence, forget opening statement, forget the course of the Q&A, forget closing argument, at sentence itself, you were still saying license was required. But holding that aside, assuming it wasn't waived or assuming it wasn't invited error in this case, wasn't there sufficient evidence otherwise to establish the need for license? You had the testimony of two on the matter. If the jury accepted what two said, they believed him, would that not standing alone be enough? Well, in this context, we believe that declaring that a license was required was basically a conclusion of the law for which there was. Oh, so you think he couldn't, you think it was error to admit him to opine that way? That is correct. Did you object to that? That was not objected to a trial. Did you object? So I kept trying to figure out whether you were making a invited error because you said that the district court somehow made a legal ruling. What was that legal ruling that was error? You make, you're conceding an opening and making a factual assertion throughout trial, right? That it needed, you didn't dispute that it needed a license. Is that correct? That is what trial counsel said in opening statement. Okay, so invited what legal error by the district court? What should have happened had I tried this case at the trial level? Was an objection should have been made to the question of whether license was required and two should have been required to go through the dual use analysis so that his opinion would have been based on proper analysis. He goes through the dual use analysis, the, the, the item, the end user, the what the items were going to be used for, whether the end user had any sinister other activities associated with him. But what we don't know what we actually what we do know about the end user in this case, Cody group was they were an underwater photography company. There was no reason to believe that was sinister. No reason to believe that Cody group was engaged in other sinister activity and two should have been required to describe what that item was that he was actually utilizing. He should have been able to distinguish between whether it was closed circuit or semi closed circuit because the government had both on the commerce control list. I mean, both on the commerce control list. Yes, but as argued in my briefs, that is not the end all. There are many exceptions and they have to be dual use the fact that these particular reason rebreathers were rejected for military use and that came out in the government's case. It was critical and in fact, by the time that the case got to sentencing the government had backed off with that to such an extent that they said these rebreathers could be used in training. Therefore, they still met the definition. Let me ask you this. If you can turn there's not much time left. Help me with willfulness. You make the argument that the evidence was insufficient to establish that the violation by the defendant here was willful. Well, Wagner had come to the facilities at helium before the items are shipped. He said that he would make a, he would apply for a preliminary determination of whether license was required the items were shipped by Ramos, they were given to Ramos Ramos pick them up and Ramos ship them before a preliminary determination of a license that even been communicated to add healing up so no one had gotten back the only, the only people who are communicating with that healing was Ramos. The only people who were communicating about whether license was required was Ramos, Diane, and Hamid who actually were the ones advising them, and they ship to Libya all the time, and they considered themselves experts in the field, so to speak, they thought Emily boysome codependent in this case was, quote unquote, incompetent that weren't actually here in the record. And they said we don't believe a license is required. So, in the emails going back and forth, that the government admitted and evidence show almost a torturous effort to go through everything and determine whether license was required. The jury have focused on consciousness of guilt and the fact that it was evidence that your client threatened to kill robot the witness, if he cooperated. That is what we're about his testimony, if jury bought that they believe them. That would take them a long way to establish willfulness wouldn't. May not be enough standing alone, but you've got other stuff here, but it would be a powerful piece of evidence on consciousness of guilt. Wouldn't it. Yes, and no, there was a lot of, I understand construing in favor of the government at this point. Yes, it could add to that analysis. But there was bad blood between and so does and it had a predated whole situation outside predated the situation. And so what it really meant. Was ambiguous at best. Thank you. Thank you. Thank you. Mr. Emily. You've saved 5 minutes for rebuttal. We're going to hear of this chair. May it please the court. So does argues that the government failed to prove that these were breeders required a license for export to Libya. And as a threshold matter, we think that this court should exercise its discretion to decline to consider that claim. Under the invited air doctrine, or that if this court does consider that claim to apply the plane air standard of review, because so does. Argue the opposite below. He repeatedly told the district court and the jury that he wasn't disputing the government's evidence that a license was required. And it wasn't just in his opening or closing sentences, but he never in cross examine the government's witness. Expert witness senior engineer Michael to who made the license determination in this case. The government also proved and provided ample evidence from which the jury could conclude that these were breeders were closed circuit breeders. And if not closed circuit rebreathers, then certainly semi closed circuit rebreathers. Senior engineer Michael to testify that there are 2 types of rebreathers on the commerce control list. As you noted, your honor, closed circuit and semi closed circuit rebreathers. And then the government presented ample evidence from which the jury could conclude that the rebreathers match those descriptions. The government introduced the manufacturers manual, showing that the manufacturer itself considered the rebreathers to be closed circuit rebreathers. That's the final 2 pages in the appendix and there you'll see an excerpt that is 2 photographs. There's an issue here, and at the bottom of the photographs is the manufacturers abbreviation for the rebreathers as which stands for micro closed circuit rebreather showing that contrary to. So, does this claim the manufacturers manual does indeed show that the rebreathers are considered to be closed circuit rebreathers and if you look at docket entry 17716, you'll see there that the government introduced testimony. Showing that he noted that CCR refers to a closed circuit rebreather can I turn your attention to sentencing so US sentencing guideline to M5.1 versus to M5.2 and I realize that wasn't objected to at the district court. So it's plain air review. Is that correct? Yes, your honor. Do we need to determine a definition for military equipment? No, the district court found that based on the plain meaning of military equipment that the rebreathers qualified as military equipment and there was substantial evidence at trial and at sentencing from sodas his own witnesses that these rebreathers had a military application. So, is that the in like an implicit finding of a definition that a military application means it's military equipment? Yes, your honor. Is that fact finding what the judge did here reviewable for clear error? Or is it a mixed question? I think it's clear area your honor at sentencing the district court overruled. So does this objection to the PSRs finding that the rebreathers had a military application? But she explained that even though the rebreathers may not have had as extensive a military application as sodas would have wanted to require they had a military application. So does his own witness at sentencing testified that although revo rebreathers and that's the manufacturer of the rebreather here aren't used by the navy for active missions. He did testify that the military does use revo rebreathers for training purposes and consistent with the government's expert department of defense expert James marsh declaration that the government submitted its sentencing. He explained that that doesn't mean for export licensing purposes that the rebreather does have a military application. So, I looked at amendment 777, which added to M5.1 and it says that, you know, section 554 offenses may be based on the export of ordinary commercial goods in violation of economic sanctions or the export of dual use goods. IE goods that have both commercial and military applications. And for that reason to M5.1 was added to promote clarity and consistency. That would seem to suggest that this should have been under 2M. At sentencing the government argued that the district court should have applied 2M 5.1 or 2M 5.2. The PSR and the probation office ended up recommending 2M 5.2, but I think either way the base offense level would have been the same because it would have been 26. Because of the national security control. Yes, your honor. Is that a factual finding that would need to be remanded for the district court to conclude? Because I didn't think that was actually determined at sentencing. That's correct because she decided to apply 2M 5.2 and she found that the rebreathers did have a military application. But even if she should have applied 2M 5.1, that would have set the base offense level at 26 for evasion of national security export controls. And we can affirm on that basis? You could. And the district court didn't make a specific finding because, as I noted, she relied on 2M 5.2. But there was ample evidence at trial showing that the reason why the commerce department controls the rebreathers for export is for national security reasons. Even SOTUS' own witness admitted at sentencing that Regal manufactures a semi-closed circuit rebreather that produces far fewer bubbles, make far less noise, and has a much greater range of distance than open circuit rebreathers. And so he admitted that these rebreathers could be used for nefarious purposes to harm the national security of the United States. And if that's true with respect to semi-closed circuit rebreathers, then it has to be true with respect to closed circuit rebreathers, which produce even fewer bubbles then. A semi-closed circuit rebreather. Can you help me with willfulness? And I want to focus you on one specific thing that troubled me in the case. And that was the opinion offered by Wagner when asked the question, have you seen other cases where it was this level of willfulness? Of course that came up on redirect, not initially, and I understand the history and what precipitated that, but there's no question that he was being asked about willfulness. And he gives an opinion. And he says at the very end, there were some objections, but ultimately the court says you opened the door, overruled, Wagner says, and I quote, I've never seen this much knowledge in a case like this. Now, the objection was the wrong objection that was made. The objection was not that this witness was not free to hold client about the defendant's state of mind, and so if it was error, we would review it only for plain error. But my question to you is whether or not this was an error, and whether it was not otherwise obvious. Yes, Your Honor. One, it was not error, because as the district court noted, the defense counsel opened the door by specifically asking Special Agent Brent Wagner about his experience in export control violation cases like this, and by asking whether he had ever brought criminal charges against the defendant for export control violations. As opposed to civil remedies. Yes, Your Honor. He was trying to make the point that available to the government in this case were both a criminal charge and a civil charge, and the implication was that under the particular facts and circumstances of this case, that the government should have charged him with a civil violation rather than a criminal one. And that opened the door for government counsel to... The problem that I have is while I think the argument is an interesting one you make, and it's implicit, it strikes me that it was error to ask him to opine about willfulness, period, end of story. They didn't make the right objection, and I agree you would only review it for plain error. But assume with me that it was error. Was it obvious? Did it otherwise affect his substantial rights? Did it cast the court in a bad light or a miscarriage of justice? Help me with this plain error analysis. Assume with me that it was error. I'm just talking for myself, and I think it is error to ask government witness to opine about the state of mind of this defendant, and he did. Tell me whether it wouldn't have been obvious and whether or not it affected his substantial rights. It wouldn't have affected his substantial rights because the evidence that he committed the export offenses willfully was overwhelming, and so this testimony wouldn't have affected those substantial rights. For example, on August 4th, 2016, Special Agent Brent Wagner specifically told Sean Robotka and Vossum and Vossum's assistant, Deb Wessler, that these rebreathers could not leave Ad Helium's warehouse until a license determination had been made. And he told them not only did he think that they would require a license, but that they wouldn't get one because the rebreathers had a military application. Now, SOTUS wasn't at this meeting, and he was adamant that he not attend this meeting, but Robotka testified that he specifically briefed SOTUS on the meeting that same day and told him that the rebreathers couldn't leave without a Commerce Department determination. And Emily Vossum testified the same thing. She briefed SOTUS on the meeting and told them that they couldn't leave the warehouse. But SOTUS was well aware even before this August 4th, 2016 meeting that a license would likely be required. In late July, 2016, a representative from Global Forwarding, which was the shipping company that Emily Vossum first tried to get to ship the rebreathers to Libya, said that this Libya shipment is much more complicated than originally thought, and you need to contact the Commerce Department and the State Department to confirm whether a license is required before we'll even agree to ship the rebreathers to Libya for you. And so Emily Vossum conveys this information to SOTUS on July 28th, 2016, and he tells her, go ahead, look into the export requirements. She does that and reports back that a federal agent from the Commerce Department, not Brent Wagner, but a separate one, had told her that he didn't think that this Libya shipment would happen. In response to that communication and other red flags that people raised to SOTUS about this shipment, SOTUS said, this is rather still a seized problem. I'm not going to get in trouble with the government for making ill-feel shipments. We can't ship to Libya. Showing that not only was he aware that he couldn't ship the rebreathers to Libya without Commerce Department approval, but that he knew doing so would be illegal. And that marks a critical turning point in the conspiracy, because it's at this point when he instructs Emily Vossum to arrange to have a renaissance. He performed the shipment and to conceal from them that a license would likely be required so that he could insulate himself from criminal liability and then pin the blame on the Saagabs so that he could benefit from this very lucrative sale at a time when he was suffering serious financial difficulties. Your Honor, this case is about a man who traded the national security of the United States for his own personal financial gain and then, in order to avoid criminal liability, tried to pin the blame on innocent victims like Diana and Mohamed Saagab. And as a response, in response to his conduct, they lost their business. They had their reputations destroyed and they were branded as terrorists. And this court should not permit him to avoid criminal liability and should affirm his convictions and sentence. Thank you. Thank you. Actually, can I ask one follow-up question? So, if I understand Ms. Rumley's argument, she was saying that the district court allowed to testify to an ultimate issue of fact in this case. So, I looked at the jury instructions for count two and it says, for the second element, that the item the defendant exported, caused to be exported, transferred, or aided and abetted the attempted export of was controlled for export on the commerce control list. Did Tu's testimony speak to that ultimate issue? And if so, why is that not problematic? Yes, Your Honor. He did testify that these rebreathers were controlled for export on the commerce control list and, therefore, that they required a license. And it would have been unusual for the government not to have offered that testimony because the government had the burden of proof. But he didn't remove that from the jury for the ability for the jury to determine for itself whether the rebreathers were controlled for export on the commerce control list. Because he walked the jury through the export administration regulations and explained how he made the determination by talking about these technical characteristics of the rebreathers such that the jury could determine for itself whether it agreed with his decision. For example, he explained that closed-circuit rebreathers produce few to no bubbles, semi-closed-circuit rebreathers may produce some bubbles, and then he introduced the manufacturer's manual. Sean Rablatka testified that these... Did he have to go through any sort of end-use analysis to find... No, Senior Engineer Michael Tu explained that there are four factors that could trigger a license requirement, not that all four factors have to be present. And he explained that he was able to make the license determination in this case, and you often can, by just taking the item's technical characteristics on the commerce control list and cross-referencing them with the item's destination, which appears on the commerce control list. But the basic question being asked is whether Tu, as a qualified expert on licensing procedure, was permitted to go beyond the foundational questions of how licensing works and what you do and who does what, and be permitted to answer the ultimate question, whether or not he needed a license for this product. Was he free to render that opinion? We're not talking about willfulness now, but we're talking about whether a qualified expert could opine about that ultimate question. Yes, Your Honor, I think he could have in this particular fact and circumstance, because he had to explain what the determination was. He was the one who told Special Agent Brent Wagner on August 17th, 2016, that a license was required. And Special Agent Brent Wagner conveyed that information to Sotus, Robotka, and Bossom. And so, it was appropriate, I think, for him to be able to testify about that. Even though it was an ultimate issue? Yes, Your Honor. And there was no objection to the ultimate issue opinion being offered, right? There was. There was? Yes. So, this court would review that claim under the Abusive Discretion Standard of Review. I just want to be sure I have that right in the answer to Judge Mizell. Was there an objection? He did object to Special Agent Brent Wagner's testimony, yes. Specifically? Excuse me. I apologize, Your Honor. I'm confusing the two experts. He did not object. Right. My understanding was that he… Objected to. Objected to. That's correct. There was no objection to two… Or cross-examination. Exactly, Your Honor. I apologize. That was my mistake. This was… And they had affirmatively… The defense had affirmatively waived the issue whether a license was required anyway. Yes, Your Honor. That's correct. I apologize for mistaking. He objected to Special Agent Brent Wagner's testimony, not to Senior Engineer Fust. So, we're back to plain air for two? Yes, Your Honor. On the ultimate issue of licensing? Yes. Okay. Okay. Ms. Rumley. The bottom line in this case, as we see it, with regard to sufficiency and variances in the subset of sufficiency, were these items dangerous to the United States? At sentencing, the government backed off all qualifications, all unmasking specifications of this item to say that they could be used in training. The only evidence… Mic up. Oh, I'm sorry. A little better? Better. By the time sentencing had rolled around, the government had completely backed off whether or not these items could be used for anything other than training. If that satisfies the definition of military equipment, then we have basically gutted the meaning of military equipment, because anything can be used to train somebody to do something. I have made that argument in my brief. Scuba gear can be found at the drugstore. Closed-circuit rebreathers, semi-closed-circuit rebreathers. We have to look at what we're dealing with, and the government never established these items were dangerous. They never established they were going to a dangerous person. I would also like to address the issue of reshipping or transporting. Transshipping is when you use an intermediate country, and reshipping is when you use an intermediate person to evade the laws of the United States. The Ramas, the Ramas, Dayan and Muhammad, held themselves out as experts. They were the ones making the determination whether a license was required. They rendered an opinion that a license was not required and told Ed Helium a license was not required. The government painted that as a misrepresentation and a conclusion based on inadequate information because Emily Boysen had said that the rebreathers were only for recreational purposes. That was in fact true, because they had been rejected for military use. That is what the record establishes. So the Ramas, Dayan and Muhammad, were not misled. They did not rely on anything that Ed Helium said, and in fact, Ed Helium did not ship the items. Ramas picked them up in a domestic sale, and now Ramas is claiming in forfeiture that those items belong to them, that they own them. The onus is on the person who ships to obtain a license, and Ed Helium did not ship. They did not, Ramas was not included within a conspiracy, and the record does not establish they were misled. So they were simply, it was a domestic sale to Ed, to Ramas, and Ramas did the shipping. Ramas needed a license, not Ed Helium. Ms. Rumley, can you address the sentencing issue? Yes. About military equipment and whether we need to be able to define that, and why it was clearly erroneous for the district court to conclude that the military application satisfied that section 2.5, I'm sorry, U.S. Sentencing Guideline 2M 5.2. Why is that clearly erroneous here? Well, we believe that it is not a military article. It's not a munitions list. It doesn't have a military application. The record established they were rejected for military use. So basically... So that's just fighting the conclusion. Why is the district court clearly erroneous as that factual finding? Or are you saying that the definition that the district court applied for military equipment is a matter of law and that's wrong? Well, if it can't be interpreted to mean anything, then it is clearly ambiguous. But military application should be, in our opinion, literally... What is the definition of military equipment? I kept expecting that in briefs. What is it? It's our position it should have its ordinary meaning. Which is what? To be used by the military in a military maneuver. And using something to train military, it could be anything. If that is the definition, then we've gutted the meaning. And to interpret something to the point where it gives an absurd result is not consistent with the rules of statutory construction in the area of criminal law. Okay. Assume that it should have been done under 2M 5.1. How is it not harmless since 26 would be the base offense level? Or the adjustment level? Under 2M 5.1, it does have to have national security controls or controls related to the proliferation of nuclear, biological, or chemical, which we know it's none of those. So it would fall under the first clause, national security controls. So then we have to look again at the item. Would this item have been a matter of national security and subject to national security controls? And that analysis was not done. And based on the information that was provided regarding the... Isn't that why it's on the Commerce Control List? It is on the Commerce Control... Being on the Commerce Control List is not the end all of it. It is controlled, but licenses can be granted for things under the CCL. There are a number of exceptions under the STA. And there's a dual-use analysis that goes on top of being listed on the Commerce Control List. And that's why, too, we know that the government did provide the framework by which the jury should have been able to determine whether a license was required. He talks about being on the Commerce Control List, and then he talks about dual use, but then he doesn't provide the guts by which anybody can make that dual-use analysis. Two never even talked about Cody Grip. Two never even talked about doing any research on what these items were intended for. Okay. I think we understand your argument, Ms. Rumley, and we'll move on to the next case. Thank you. Thank you.